ROB BONTA
Attorney General of California
ANYA M. BINSACCA
Supervising Deputy Attorney General
KRISTIN A. LISKA
Deputy Attorney General
State Bar No. 315994
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3916
 Fax:  (415) 703-5480
 E-mail:  Kristin.Liska@doj.ca.gov
*Attorneys for Defendant*
*Secretary of State Shirley Weber*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **ANDREW MARIA,**<br><br>                                        Plaintiff,<br><br>         **v.**<br><br>**SHIRLEY WEBER, in her official capacity as Secretary of State of the State of California,**<br><br>                                        Defendant. | 2:22-cv-05105-MCS-GJSx<br><br>**MOTION TO DISMISS; NOTICE OF MOTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:           October 17, 2022<br>Time:          9:00 a.m.<br>Courtroom:  7C<br>Judge:         The Honorable Mark C. Scarsi<br>Trial Date:   Not scheduled<br>Action Filed: 7/20/2022 |

# TABLE OF CONTENTS

**Page**

Memorandum of Points and Authorities ................................................................. 2

Introduction .......................................................................................................... 2

Background ........................................................................................................... 3

    I.     Legal Background ............................................................................. 3

    II.    Factual Background .......................................................................... 6

Legal Standard ..................................................................................................... 7

Argument .............................................................................................................. 8

    I.     Plaintiff Lacks Standing ................................................................... 8

          A.    Plaintiff Lacks an Injury in Fact ........................................... 8

          B.    Plaintiff Has Not Demonstrated Redressability ...................... 10

    II.    Plaintiff's Suit Is Barred by Laches .................................................. 12

Conclusion .......................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ......................................................................... 7

*Bowyer v. Ducey*
   506 F. Supp. 3d 699 (D. Ariz. 2020) ........................................... 9, 11, 13

*Carney v. Adams*
   141 S. Ct. 493 (2020) ....................................................................... 8

*Daniaq LLC v. Sony Corp.*
   263 F.3d 942 (9th Cir. 2001) ........................................................... 12

*Donald J. Trump for President, Inc. v. Cegavske*
   488 F. Supp. 3d 993 (D. Nev. 2020) ................................................ 10

*Feehan v. Washington Elections Commission*
   506 F. Supp. 3d 596 (E.D. Wis. 2020) ........................................... 9, 11

*George Nelson Foundation v. Modernica, Inc.*
   12 F. Supp. 3d 635 (S.D.N.Y. 2014) ............................................... 12

*King v. Whitmer*
   505 F. Supp. 3d 720 (E.D. Mich. 2020) ...................................... 10, 13

*Leite v. Crane Co.*
   749 F.3d 1117 (9th Cir. 2014) .......................................................... 7

*M.S. v. Brown*
   902 F.3d 1076 (9th Cir. 2018) ........................................................ 10

*Martel v. Condos*
   487 F. Supp. 3d 247 (D. Vt. 2020) ................................................. 10

*Moore v. Circosta*
   494 F. Supp. 3d 289 (M.D.N.C. 2020) .......................................... 10

*Pistor v. Garcia*
   791 F.3d 1104 (9th Cir. 2015) .......................................................... 7

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Soules v. Kauaians for Nukolii Campaign Commission*
    849 F.2d 1176 (9th Cir. 1988) ..................................................................... 13

*Spokeo, Inc. v. Robins*
    578 U.S. 330 (2016) ........................................................................................ 8

*Town of Chester v. Laroe Estates, Inc.*
    137 S. Ct. 1645 (2017) .................................................................................... 8

*Trump v. Wisconsin Elections Commission¸*
    983 F.3d 919 (7th Cir. 2020) ....................................................................... 13

*Wood v. Raffensperger*
    981 F.3d 1307 (11th Cir. 2020) ............................................................... 9, 12

COURT RULES

Federal Rules of Civil Procedure
    Rule 12(b)(1) ........................................................................................... 1, 2, 7
    Rule 12(b)(6) ....................................................................................... 1, 3, 7, 12

Local Rule 7-3 ....................................................................................................... 1

STATUTES

United States Code, Title 42
    § 1983 ............................................................................................................... 6

1
2

# TABLE OF AUTHORITIES
## (continued)

3

**Page**

California Elections Code

§ 320 .................................................................................................. 3
§ 3000.5 ............................................................................... 3, 11, 14
§ 6091 ................................................................................................ 4
§ 12220 .............................................................................................. 3
§ 13000 ...................................................................................... 3, 14
§ 14102 ...................................................................................... 3, 14
§ 14105 .............................................................................................. 3
§ 14110 .............................................................................................. 3
§ 14310 .............................................................................................. 5
§ 14310(f) .......................................................................................... 5
§ 15001(a) .......................................................................................... 5
§ 15001(c) .......................................................................................... 5
§ 15001(c)(3) ..................................................................................... 5
§ 15150 .............................................................................................. 3
§ 15360(a) .......................................................................................... 3
§ 15360(f) .......................................................................................... 4
§ 15610 .............................................................................................. 4
§ 16003 ...................................................................................... 6, 12
§ 16100 .............................................................................. 5, 12, 13
§ 16401(c) .................................................................................. 5, 12
§ 17301(b) .......................................................................................... 5
§ 17301(c) .......................................................................................... 5
§ 17305 .............................................................................................. 5
§ 17502 .............................................................................................. 5
§ 17504 .............................................................................................. 5
§ 17506 .............................................................................................. 5
§ 19270(a) .......................................................................................... 4
§ 19270(b) .................................................................................. 4, 11
§ 19271(b) .......................................................................................... 4
§ 19271(c) .......................................................................................... 4
§ 19271(d) .......................................................................................... 4
§ 19273 .............................................................................................. 4

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE COURT AND TO PLAINTIFF PROCEEDING PRO SE:**

**PLEASE TAKE NOTICE** that on October 17, 2022 at 9:00 a.m. at the United States District Court, Central District of California, First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, in Courtroom 7C, Defendant Secretary of State Shirley Weber will and hereby does move to dismiss this action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that plaintiff lacks standing and this case is barred by laches.

This motion is based on this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities, all pleadings and papers on file in this action, and such other matters as the Court may deem appropriate. Because plaintiff is proceeding pro se, no meet and confer conference was required under Local Rule 7-3.

Dated:  August 18, 2022                    Respectfully Submitted,

                                            ROB BONTA
                                            Attorney General of California
                                            ANYA M. BINSACCA
                                            Supervising Deputy Attorney
                                            General


                                            */s/ Kristin Liska*

                                            KRISTIN A. LISKA
                                            Deputy Attorney General
                                            *Attorneys for Secretary of State*
                                            *Shirley Weber*

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Andrew Maria seeks to re-litigate the November 2020 General Election. His complaint alleges—based on information available in December 2020—that there is a supposed flaw in all electronic voting machines that makes it possible for unnamed nefarious actors to alter vote totals without detection. He does not allege or point to any evidence that any particular vote was wrongly counted or that vote totals were actually manipulated. Rather, he contends that this alleged flaw in voting machines generally raises uncertainty about whether votes cast in the November 2020 General Election were accurately counted. Based on this claimed uncertainty, he asks this court to order defendant Secretary of State to refrain from destroying and to retain certain election materials. He also asks this court for two rather extraordinary orders: (1) to de-certify the results of the November 2020 General Election and thereby disenfranchise the 17 million California voters, and potentially the hundreds of millions of voters nationally, who cast votes in that election and (2) to require the upcoming November 2022 General Election—which is less than three months away—be conducted by paper ballots without the use of any machines. It is far too late at this juncture to undo an election nearly two years past or to fundamentally alter how the upcoming election is conducted.

In any event, plaintiff's unfounded allegations are irrelevant because two fatal procedural flaws bar his suit and require dismissal. First, plaintiff lacks standing. Plaintiff's alleged injury of uncertainty over whether votes were counted accurately is a generalized injury insufficient to establish standing. And plaintiff's requested relief would not remedy this alleged injury in any event. Because plaintiff has not established an injury in fact or redressability, he lacks standing and this suit should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(1).

Second, it is apparent on the face of the complaint that plaintiff's suit is barred by laches, requiring dismissal under Rule 12(b)(6) for failure to state a claim on which relief can be granted. Plaintiff waited nearly two years to bring his suit challenging the November 2020 General Election and seeking to fundamentally rework how an upcoming election less than three months away is conducted. Yet the basis of plaintiff's complaint is information in a declaration filed in another court proceeding in December 2020. Plaintiff cannot account for his near two-year delay in waiting to bring suit or the prejudice this delay has caused. Courts in December 2020 held that laches barred suits challenging the November 2020 presidential election; those holdings apply with even more force here, almost two years later. It is far too late to turn back the clock and undo the November 2020 General Election, especially on the basis of such hypothetical and unsupported claims.

## BACKGROUND

### I.    LEGAL BACKGROUND

Under California law, elections are administered jointly by the Secretary of State and localities. Many of the logistics of running an election are handled by local elections officials—the county or city official responsible for overseeing elections, *see* Cal. Elec. Code § 320. Local officials are responsible for, among other duties, dividing various jurisdictions into voting precincts, providing supplies for polling places, and conducting the canvass and count of votes in accordance with state law. *See, e.g., id.* §§ 12220, 14105, 14110, 15150. They are also responsible for preparing and printing ballots. *Id.* §§ 13000, 14102. State law requires that election officials prepare and send out a paper ballot and return envelope to every registered voter in their jurisdiction. *Id.* § 3000.5.

In addition to conducting the canvass of votes, election officials are also required to conduct a public manual tally of 1% of cast votes during the canvass period. Cal. Elec. Code § 15360(a). The election officials prepare a report on this

tally to return along with the certification of the official canvass. *Id.* § 15360(f). In it, they must identify any discrepancies between the manual tally and machine count of votes and explain how they resolved such discrepancies. *Id.* When there are discrepancies between the paper ballot and electronic tabulation device in the tally, it is the paper ballot that controls. *Id.* An elections official may also order a recount when they have reasonable cause to believe there has been a miscount or where there is an inability to explain the returns of a precinct. *Id.* § 15610.

At the same time, the Secretary of State has responsibility for overseeing the conduct of elections. For instance, the Secretary of State is responsible for providing a certified list of candidates to be included on voter ballots reflecting the nominations of recognized political parties or winners of primaries. *E.g.*, Cal. Elec. Code § 6091. The Secretary of State is also responsible for approving electronic voting machines for use in elections. *Id.* § 19270(b).[1] To be approved, such machines must provide "an accessible voter verified paper audit trail," *id.* § 19270(a), which is "a paper cast vote record containing a copy of each of the voter's selections that allows each voter to confirm his or her selections before the voter casts his or her ballot," *id.* § 19271(c). Where such machines are used, the paper audit trail is the official record used for the election official's manual tally or in a recount, and it governs in any conflict with the electronic record of a vote. *Id.* § 19273.

State law also imposes specific record retention requirements. With respect to presidential elections, local elections officials must retain the following items: 1) voted polling place ballots, 2) paper record copies of voted polling place ballots,[2] 3)

---

[1] The Elections Code refers to such machines as a "direct recording electronic voting system," which is defined as a "voting system that records a vote electronically and does not require or permit the voter to record his or her vote directly onto a tangible ballot." Cal. Elec. Code § 19271(b).

[2] A paper record copy of a cast vote is a "an auditable document that corresponds to the selection made on the voter's ballot and lists the contests on the ballot and the voter's selections for those contest." Cal. Elec. Code § 19271(d).

voted vote by mail voter ballots, 4) vote by mail voter identification envelopes, 5) voted provisional voter ballots,[3] 6) provisional ballot voter identification envelopes, 7) spoiled ballots, 8) canceled ballots, 9) surrendered unused vote by mail ballots, and 10) ballot receipts.  Cal. Elec. Code § 17301(b); *see also id.* § 17305 (retention of ballot cards).  County elections officials retain this information for 22 months. *Id.* § 17301(b).  If no case challenging the election that involves the locality's votes is initiated under state law within this 22-month period, the materials must be destroyed.  *Id.* § 17301(c).  Elections officials also preserve all applications for vote by mail ballots, the list of new resident voters, and the records related to the appointment of precinct officials for this 22-month period following an election. *Id.* §§ 17502, 17504, 17506.  They are further required to submit to the Secretary of State a copy of any electronic vote count program by the seventh day before an election, to be used for any recount or official canvass of votes or for any logic and accuracy tests required by the Secretary of State.  *Id.* § 15001(a), (c)(3).  The Secretary of State retains the programs for six months, and then returns them to the elections officials to retain for the remaining 16 months of the 22-month period.  *Id.* § 15001(c).

Finally, state law provides voters with an avenue by which to challenge the results of an election.  Elections Code section 16100 lays out seven specific grounds on which a voter can challenge an election they were eligible to vote in, including errors in vote-counting programs or summations of ballot counts, or that illegal votes were cast.  In cases involving presidential electors, such a suit must be brought within 10 days after the declaration of the result of the election.  *Id.* § 16401(c).  The Elections Code provides for the expedition of such suits, with the final determination and judgment to be entered "at least six days before the first

---

[3] A voter claiming to be properly registered to vote but who does not appear on a voter list has the right to cast a provisional ballot to be counted upon confirming that the voter is eligible and registered.  Cal. Elec. Code § 14310.  This procedure also permits a voter who is registered to vote by mail to vote in person at a precinct instead.  *Id.* § 14310(f).

Monday after the second Wednesday in December" of the election year.  *Id.*
§ 16003.

## II.    FACTUAL BACKGROUND

The following factual background is drawn from the complaint's allegations.
In recounting these allegations, the Secretary of State does not admit their veracity
or accuracy.  Plaintiff Andrew Maria states that he is a resident and registered voter
of the State of California.  Compl. ¶ 9.  He alleges that there is a "cryptographic
security risk inherent in all voting machines by design" that "makes the output of
votes shown in reported election results impossible to reconcile with the ballot
inputs, except under a full visual inspection and re-count of all paper ballots cast."
*Id.* ¶ 2; *see also id.* ¶¶ 6, 16, 17.  Plaintiff contends that this supposed security risk
means that "Americans cannot have any level of confidence that the reported results
of any elections accurately reflect the votes cast."  *Id.* ¶ 5.  He further alleges that it
is thus "impossible to prove" that the November 2020 General Election "was
unfair."  *Id.* ¶ 19.  Because of this supposed flaw in the voting machines used,
plaintiff alleges that the results of the November 2020 and November 2022 General
Elections "were and will be subject to modification by nefarious actors, foreign or
domestic" and that "such fraudulent results would impact the legitimacy of the
Legislative branch of the Federal government and therefore affect the other 49
states."  *Id.* ¶ 25.

The complaint raises three claims under 42 U.S.C. § 1983.  First, plaintiff
alleges that because of the supposed flaw in the voting machines, "California has
deprived its voters of the capability of knowing that their vote was accurately
counted" in violation of the Equal Protection Clause of the Fourteenth Amendment.
Compl. ¶ 32.  Second, he alleges that this inability to know also violates the Due
Process Clause of the Fourteenth Amendment.  *Id.* ¶ 39.  Third, he alleges that
using machines with the supposed flaw violates the Guarantee Clause of the
Constitution.  *Id.* ¶ 43.  Plaintiff seeks injunctive relief that would: 1) prohibit the

Secretary of State from "destroying, altering, or otherwise changing all voting machines, software, peripherals, and other data and equipment used to cast, examine, count, tabulate, modify, store, or transmit votes or voting data" during the November 2020 General Election and which are planned to be used in the upcoming November 2022 General Election, 2) require the Secretary of State to preserve such data and equipment for an indeterminate amount of time, and 3) require the Secretary of State to "immediately stop the use of election machines and to reconfigure elections to be held exclusively with paper ballots." Compl., Prayer for Relief. Plaintiff also seeks a court order requiring the Secretary of State to de-certify the results of the November 2020 General Election. *Id.*

## LEGAL STANDARD

Under Rule of Civil Procedure 12(b)(1), a party may move to dismiss a complaint on the basis that there is no subject matter jurisdiction. In such situations, the party asserting jurisdiction has the burden of proving it exists. *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). In analyzing a motion under Rule 12(b)(1), a court does not presume the truthfulness of a plaintiff's allegations and may hear evidence not presented in the complaint. *Id.*

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice." *Id.* In resolving a motion under Rule 12(b)(6), the court "[a]ccep[s] the plaintiff's allegations as true and draw[s] all reasonable inferences in the plaintiff's favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

**ARGUMENT**

**I.    PLAINTIFF LACKS STANDING**

In order for a federal court to have jurisdiction over a case, the plaintiff must have standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The Supreme Court has "established that the 'irreducible constitutional minimum' of standing consist of three elements." *Id.* (citation omitted). A plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* A plaintiff bears the burden of establishing that all three elements of standing are met. *Id.* And "standing is not dispensed in gross," but rather "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quotation marks omitted).

**A.    Plaintiff Lacks an Injury in Fact**

First, plaintiff lacks standing because he has failed to allege a particularized injury as required to have standing. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (citation omitted). To establish that the injury is particularized, the plaintiff must show that the challenged conduct "affect[s] the plaintiff in a personal and individual way." *Id.* (internal quotation marks omitted). That is, "a plaintiff cannot establish standing by asserting an abstract 'general interest common to all members of the public,' 'no matter how sincere' or 'deeply committed' a plaintiff is to vindicating that general interest." *Carney v. Adams* 141 S. Ct. 493, 499 (2020) (citation omitted).

Plaintiff here solely raises a generalized grievance. He alleges that there is a supposed flaw in voting machines that *might have* resulted in votes being improperly counted. He does not identify whether that alleged flaw is even resident

on California machines, and the declaration underlying his allegations does not once mention or discuss California's voting system or whether the allegedly flawed machines were used in California.  Nor does he does contend or allege that votes *were* improperly counted, let alone that *his vote* was improperly counted.  Rather, his allegation is that *voters in general* cannot be certain whether their votes were accurately counted and thus that there allegedly is a reason to doubt the outcome of the November 2020 General Election.  But that is a concern that, as he himself notes in the complaint, impacts the whole country.  Nowhere does plaintiff point to any way in which he is personally and uniquely harmed by this supposed flaw in voting machines.   Rather, any voter in California—perhaps any person in California—could raise the same claim with the same alleged injury.  That is a quintessential generalized grievance.

Indeed, other courts have recognized precisely that in cases raising similar challenges to the November 2020 presidential election.  For instance, in *Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020), the Eleventh Circuit held that a voter lacked standing in a suit brought against Georgia election officials.  The plaintiff alleged that he was injured by the improper counting of votes and valuing some votes over others.  *Id.* at 1314-1315.  The court concluded that these injuries were generalized grievances since they affected the plaintiff "in the same way as every other Georgia voter" and were "shared identically by the four million or so Georgians who voted" in the election.  *Id.* at 1315; *see also id.* at 1314 ("All Americans, whether they voted in this election or whether they reside in Georgia, could be said to share Wood's interest in 'ensur[ing] that [a presidential election] is properly administered." (alterations in original)).  District courts evaluating similar claims of impropriety, inaccurate vote counts, and fraud have similarly agreed that the alleged injuries flowing to a voter from such conduct was generalized.  *See, e.g.*, *Feehan v. Washington Elections Commission*, 506 F. Supp. 3d 596, 609-610 (E.D. Wis. 2020); *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 711-712 (D. Ariz. 2020);

1  *Moore v. Circosta*, 494 F. Supp. 3d 289, 312-314 (M.D.N.C. 2020); *Donald J.*

2  *Trump for President, Inc. v. Cegavske*, 488 F. Supp. 3d 993, 1000-1001 (D. Nev.

3  2020); *Martel v. Condos*, 487 F. Supp. 3d 247, 253-254 (D. Vt. 2020).  These cases

4  further buttress the conclusion that plaintiff's alleged injury here is insufficiently

5  particularized.  Because plaintiff alleges only a generalized grievance, he has failed

6  to establish an injury in fact and therefore lacks standing.

7  **B.    Plaintiff Has Not Demonstrated Redressability**

8  Even if plaintiff had shown a sufficient injury in fact, he still has not

9  established standing because this injury is not redressable by the relief he requests.

10  In order to have standing, a plaintiff must also establish redressability.  To do so,

11  the plaintiff "must show that it is 'likely, as opposed to merely speculative, that the

12  injury will be redressed by a favorable decision.'"  *M.S. v. Brown*, 902 F.3d 1076,

13  1083 (9th Cir. 2018) (citation omitted).  Where "a favorable decision would not

14  require the defendant to redress the plaintiff's claimed injury, the plaintiff cannot

15  demonstrate redressability."  *Id.*  That is the situation here:  Plaintiff's requested

16  relief—de-certifying the November 2020 General Election results, retaining certain

17  election materials, and changing to paper ballots—would still fail to remedy the

18  injury that he alleges.

19  First, plaintiff asks the Court for an order de-certifying the results of the

20  November 2020 General Election.  But doing so would not remediate the alleged

21  harm that plaintiff identifies.  Plaintiff's alleged harm stems from claimed

22  uncertainty over whether votes cast in the November 2020 General Election were

23  accurately counted.  De-certifying the result of that election—particularly nearly

24  two years after it occurred—would do nothing to provide plaintiff with the certainty

25  he supposedly seeks.  Rather, all that de-certifying a long-past election would do is

26  to "deny[] millions of others *their* right to vote."  *King v. Whitmer*, 505 F. Supp. 3d

27  720, 735 (E.D. Mich. 2020) (emphasis in original).  Plaintiff's requested relief

28  "would transform all of the alleged [potentially miscounted] votes from being

1    [miscounted] to being destroyed." *Bowyer*, 506 F. Supp. 3d at 712; *see also*

2    *Feehan*, 506 F. Supp. 3d at 610.  Disenfranchising the 17 million California voters

3    in the November 2020 General Electione would do nothing to provide plaintiff

4    certainty.  Therefore, this requested relief would not redress any alleged injury.

5        Second, plaintiff asks for an order from this Court to the Secretary of State

6    preventing the destruction of certain election materials and data, and requiring the

7    retention of these material and data.  The only conceivable reason to request the

8    retention of these materials at this juncture on the eve of the 22-month retention

9    period's end is to further plaintiff's untimely challenge to the November 2020

10   General Election and his attempt to de-certify the results of that election.  As noted

11   above, any order de-certifying the election's results would not remedy plaintiff's

12   harm.  Aside from serving to further plaintiff's long-delayed challenge to an

13   election two years past, these aspects of plaintiff's injunctive relief would not

14   remedy any of the alleged harms he identifies.

15       Finally, plaintiff asks for an order from this Court requiring the Secretary of

16   State to require paper ballots and not to use any election "machines" for the

17   November 2022 General Election.  This would similarly fail to provide any relief to

18   the harm that plaintiff alleges.  For one, California already conducts its elections by

19   paper ballot: every voter receives a paper ballot by mail with return materials and

20   any electronic voting machines are required to provide a paper audit trail.  *See* Cal.

21   Elec. Code §§ 3000.5, 19270(b); *see also supra* at p. 3-4.  Moreover, plaintiff's

22   claimed injury relates to a past election and alleged uncertainties about the accuracy

23   of counting the votes cast in that election.  Altering how *future* elections are

24   conducted would do nothing to impact the *past* election plaintiff's challenge relates

25   to.  He has thus failed to establish redressability as to this final requested relief.

26   Since none of the relief that plaintiff seeks would redress his alleged injuries—

27   should they even constitute an injury in fact—he lacks standing.

28

## II.   PLAINTIFF'S SUIT IS BARRED BY LACHES

Finally, the Court should dismiss this action because the doctrine of laches bars this suit.  Laches is "an equitable defense that prevents a plaintiff, who 'with full knowledge of the facts . . . sleeps upon his rights.'"  *Daniaq LLC v. Sony Corp.*, 263 F.3d 942, 950-951 (9th Cir. 2001) (citation omitted).  To establish that laches applies, a defendant must prove "both an unreasonable delay by the plaintiff and prejudice to itself."  *Id.* at 951 (quotation marks omitted).  A court may dismiss an action under Rule 12(b)(6) as barred by laches where the applicability of the defense is clear on the face of the complaint.  *See, e.g.*, *George Nelson Foundation v. Modernica, Inc.*, 12 F. Supp. 3d 635, 655 (S.D.N.Y. 2014).

That is precisely the situation here: it is clear on the face of the complaint that plaintiff has unreasonably delayed bringing this suit and, in doing so, has caused prejudice to the Secretary of State.  Plaintiff filed suit almost *two years* after the election he challenges.  In that time, the winning candidates have been sworn into office and conducted official affairs; indeed, some of them, such as members of the House of Representatives, are now nearing re-election.  It is far too late at this point, on the eve of another general election, to "turn back the clock and create a world in which the 2020 election results are not certified."  *Wood*, 981 F.3d at 1317 (internal quotation marks omitted).  This is particularly so given the existence of a state court procedure that would have enabled plaintiff to challenge the November 2020 General Election in state court with sufficient time to resolve the challenge *before* the winning candidates of that election were sworn into office.  *See* Cal. Elec. Code §§ 16100, 16401(c), 16003.

Nor does plaintiff point to any explanation for his delay in bringing this suit.  Indeed, the complaint itself shows that plaintiff very well could have brought this suit long ago.  In it, plaintiff cites to and relies exclusively on an affidavit dated November 29, 2020.  *See* Compl., Ex. A, at 37.  The complaint states the exhibit

was filed on December 1, 2020 in another federal court case.  Compl., ¶ 16.[4]  The document on which plaintiff bases his suit has been available to him for nearly two years.  And yet in that entire time—including the window available for suit under Elections Code § 16100—plaintiff did not bring this suit.  Plaintiff has pointed to no new developments—nor could he—that would justify this unreasonable delay.

The Ninth Circuit has held that where someone seeking to challenge an election's results knew of the basis for that challenge and then delayed just months after the election before filing, laches barred the suit.  *Soules v. Kauaians for Nukolii Campaign Commission*, 849 F.2d 1176, 1180-1182 (9th Cir. 1988).  It is important to bar such challenges, the Ninth Circuit has recognized, "lest the granting of post-election relief encourage sandbagging on the part of wily plaintiffs."  *Id.* at 1180.  Indeed, with respect to the November 2020 presidential election, multiple courts found laches barred lawsuits brought *only a month* after the election, in December 2020.  *See Trump v. Wisconsin Elections Commission¸* 983 F.3d 919, 926 (7th Cir. 2020); *Bowyer*, 506 F. Supp. 3d at 717-719; *King*, 505 F. Supp. 3d at 731-732.  Their finding of unreasonable delay and prejudice from bringing the suit just a month after the November 2020 presidential election and once results had been certified applies with even more force now, almost two years later.  Plaintiff's attempts to de-certify the November 2020 General Election results and retain related election materials in furtherance of a challenge to that election comes far too late.

The same is true as to plaintiff's attempt to change the method by which the State will conduct the upcoming November 2022 General Election.  Plaintiff's casually requested relief to alter how the election is conducted would touch upon

---

[4] The complaint states that this affidavit was filed in a court case in the District of Colorado, presumably *O'Connor v. Merida*, No. 20-cv-1771.  However, there is no docket entry in the *O'Connor* matter reflecting the filing of the affidavit or dated December 1, 2020.  Instead, the affidavit appears to have been filed as an exhibit to the complaint in *Feehan v. Wisconsin Election Commission*, No. 20-cv-1771, in the Eastern District of Wisconsin.

almost every aspect of the Elections Code and would be impossible to administer less than three months before the election.  Administering elections is a complex interplay of statutory requirements and deadlines, and an equally complex interplay of the logistics and human resources required to carry out an election for over 20 million registered voters.  Ballots must be mailed to state voters by October 10, 2022, just over 50 days from now.  *See* Cal. Elec. Code § 3000.5 (timeline for mailing ballots).  Particularly given that it is local election officials, not the Secretary of State, who are responsible for printing and mailing ballots, *see id.* §§ 13000, 14102, it is far, far too late to enact any significant changes to how the November 2022 General Election is conducted.

Ultimately, the information plaintiff's claims are predicated on has been in the public record for almost two years.  Plaintiff has not and cannot identify any reason for delaying so long in bringing suit.  At this juncture, it is far too late to undo the results of the November 2020 General Election or to affect a change to the conduct of the November 2022 General Election.  Even if plaintiff had standing to bring this suit, it would still be barred by laches.

///

///

///

1

**CONCLUSION**

2        Plaintiff's complaint is rife with procedural defects.  He has failed to establish

3   either an injury in fact or redressability as necessary to demonstrate standing.  And

4   his nearly two-year delay in bringing this suit until the eve of the next election—

5   despite the existence of an accelerated state court procedure intended to raise

6   precisely this sort of claim in time to adjudicate it before the elected official is

7   sworn in—makes this precisely the sort of case barred by the doctrine of laches.

8   The Court should therefore dismiss this case in full with prejudice.

9

10

11   Dated:  August 18, 2022                    Respectfully Submitted,

12                                              ROB BONTA
                                                Attorney General of California
13                                              ANYA M. BINSACCA
                                                Supervising Deputy Attorney
14                                              General

15

16                                              */s/ Kristin Liska*

17                                              KRISTIN A. LISKA
                                                Deputy Attorney General
18                                              *Attorneys for Secretary of State
                                                Shirley Weber*

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

Case Name:    ***Maria, Andrew v. Shirley Weber***

Case No.    **2:22-cv-05105-MCS-GJSx**

I hereby certify that on August 18, 2022, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1. **MOTION TO DISMISS; NOTICE OF MOTION; MEMORANDUM OF POINTS AND AUTHORITIES**

2. **[PROPOSED] ORDER GRANTING MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct.

Executed on August 18, 2022, at San Francisco, California.

| Vanessa Jordan | *Vanessa Jordan* |
|:---:|:---:|
| Declarant | Signature |